IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS

| | |
|---|---|
| UNM RAINFOREST INNOVATIONS,<br><br>    Plaintiff,<br><br>v.<br><br>TOYOTA MOTOR NORTH AMERICA, INC., TOYOTA MOTOR SALES, U.S.A., INC., and TOYOTA MOTOR ENGINEERING & MANUFACTURING NORTH AMERICA, INC.<br><br>    Defendants. | Civil Action No. 2:23-cv-00424-JRG<br><br>JURY TRIAL DEMANDED |

**SURREPLY TO PANASONIC'S MOTION FOR LEAVE TO INTERVENE**

Panasonic's[1] Motion must be denied. PAS fails to satisfy Rule 24(a). *Haspel & Davis Milling & Planting Co. v. Bd. of Levee Comm'rs of the Orleans Levee Dist.,* 493 F.3d 570, 578 (5th Cir. 2007) ("Failure to satisfy any one requirement precludes intervention of right.").[2] PAS's permissive intervention under Rule 24(b) should be denied. No justiciable dispute exists between PAS and UNMRI. As a sovereign entity, UNMRI cannot be forced to sue PAS, an entity against which UNMRI possesses no identified right to recovery.

### I.    ARGUMENT

**A.    Panasonic's interests, if any, are adequately represented by the Toyota Defendants.**

PAS's cited case law is distinguishable and confirms that Panasonic lacks a direct, substantial, legal interest in the outcome of this litigation. *See, e.g., Uniloc 2017 LLC v. Verizon*

---

[1] "Panasonic" or "PAS" refers to movant Panasonic Automotive Systems Co., Ltd.
[2] To intervene pursuant to Rule 24(a)(2), (1) the application for intervention must be timely; (2) the applicant must have an interest relating to the property or transaction which is the subject of the action; (3) the applicant must be so situated that the disposition of the action may, as a practical matter, impair or impede his ability to protect that interest; (4) the applicant's interest must be inadequately represented by the existing parties to the suit. *Id*.

*Commc'ns Inc.*, No. 2:18-CV-00513-JRG, 2019 WL 1773118, at *3 (E.D. Tex. Apr. 23, 2019) (finding "Ericsson's interests are substantial and go beyond a generalized preference for a particular case outcome" because Ericsson was "the *designer and manufacturer* of the Accused Ericsson Base Stations") (emphasis added).[3] Here, PAS admits it is merely "a supplier of the infotainment units" (Dkt. 44 at 2) that incorporate as a subcomponent the Wi-Fi chips whose operations are at issue. PAS neither designs nor makes the Wi-Fi chips whose functionality is covered by the asserted patent claims.

Further, unlike *Uniloc*, Panasonic failed to provide evidence of the terms of any alleged indemnity agreement between PAS and any Toyota Defendant. 2019 WL 1773118, at *3 (citing correspondence regarding indemnity agreement attached as "Dkt. No. 23–2"); *see also LED Wafer Sols. LLC v. Samsung Elecs. Co.*, No. W-21-CV-00292-ADA, 2021 WL 5450145, at *3 (W.D. Tex. Nov. 22, 2021) (relying on "the letter from Samsung regarding its indemnity agreement"). Panasonic has not disclosed the alleged indemnification agreement or any supporting material. The conclusory declaration PAS relies on is insufficient. It does not identify the Toyota Defendants as "the indemnified" entity(ies). Dkt. 18-1, ¶ 4 ("On September 19, 2023, *Toyota* informed PAS of the Complaint.") (Emphasis added); *id*. ¶ 5 ("On September 25, 2023, Panasonic agreed to indemnify *Toyota* in relation to the allegations in the Complaint relating to Accused Instrumentalities supplied by PAS.") (Emphasis added); *see also* Dkt. 18 at 1-2 (making clear the distinction between "The Toyota Defendants" and the indemnified customer "Toyota").

---

[3]*See also Team Worldwide Corp. v. Wal-Mart Stores, Inc.*, No. 2:17-cv-00235, 2017 WL 6059303, at *4 (E.D. Tex. Dec. 7, 2017) (finding that manufacturers of accused products have a substantial interest in patent case against their customers); *U.S. Ethernet Innovations, LLC v. Acer, Inc.*, No. 6:09-cv-448, 2010 WL 11488729, at *1 (E.D. Tex. May 10, 2010) (finding Intel had interest in litigation in part because it was "the manufacturer of a networking component implicated in USEI's infringement allegations").

Panasonic's reply does not cure the fundamental deficiencies in the declaration.[4]

      Second, Toyota can adequately represent Panasonic's interest (whatever they may be) just as Toyota can every other sub-system supplier. PAS admits that the Toyota Defendants "have common interests with PAS in presenting the *same* defenses," (Dkt. 44 at 2) (Emphasis added). That admission establishes the presumption of adequate representation. *Uniloc*, 2019 WL 1773118, at *4 ("If the intervenor and an existing party share the same ultimate objective, a presumption arises that the intervenor's interests are adequately represented."). PAS not only has the same objectives as the Toyota Defendants, but also states that it will offer the exact same defenses. Nothing in the reply demonstrates the requisite adversity of interest, collusion, or nonfeasance between UNMRI and the Toyota Defendants that would require PAS to come in so as to protect itself. Dkt. 44 at 1-3. The unity of interests between the Toyota Defendants and PAS alone supports denial of the Motion. *See Haspel & Davis Milling & Planting Co.*, 493 F.3d at 579 (denying motion to intervene because the party requesting intervention failed to show that the named defendant could not adequately represent it by failing to allege "collusion, nonfeasance, or adversity of interest."); *Bush v. Viterna*, 740 F.2d 350, 356–57 (5th Cir. 1984) (finding no inadequate representation because the "Association makes no showing of adversity of interest in *this* proceeding. . . " (emphasis in original).

      Rather than providing a single concrete example of a divergent interest, Panasonic claims *some* "superior knowledge" of the accused components and unspecified "strong and unique

---

[4] Unlike Panasonic, in *U.S. Ethernet Innovations, LLC*, Intel established that all defendants were "its customers and that it ha[d] executed partial indemnification agreements with six of the [d]efendants." 2010 WL 11488729, at *1. In fact, the named defendants "account[ed] for more than one third of Intel's net revenue in 2007." *Id*. at *2. Panasonic has not and cannot make such allegations. Thus, Panasonic's reliance on *U.S. Ethernet Innovations, LLC* is misplaced. *Compare* Dkt. 18-1 (failing to name any Defendant as a customer or indemnitee), *with U.S. Ethernet Innovations, LLC,* Dkt. 107-2 (specifically identifying all defendants as customers).

3

interests." But Panasonic, admittedly, did not design and does not manufacture the Wi-Fi chips at issue. It is not even clear if PAS manufactures or assembles the sub-systems that incorporate the Wi-Fi chips. What is known is that PAS supplies Toyota infotainment systems, and those infotainment systems incorporate Wi-Fi chips from unidentified manufacturers and subcontractors that comply with the 802.11ac and 802.11ax Wi-Fi standards. As such, Panasonic's reliance on *Uniloc* is unavailing. *See Uniloc*, 2019 WL 1773118, at *5 ("[T]he Court agrees that Ericsson [as the designer and manufacturer of the Accused Ericsson Base Stations] likely possesses 'superior knowledge of how the accused base stations are configured and operate' and is thus better situated to understand and defend its own products.").

Panasonic, like Toyota, is a downstream customer of the component manufacturer(s) that supply the sub-systems and components practicing the asserted claims. An act of infringement can only occur based on the functionality and operation of the Wi-Fi chip. There is no evidence of (1) which chip manufacturers (there could be many) Panasonic purchases Wi-Fi chips from for incorporation into the Toyota infotainment systems, or that (2) Panasonic even buys Wi-Fi chips directly from any chip manufacturers or instead purchases sub-systems that include such chips. Other suppliers of modules or sub-systems may exist between Panasonic and the Wi-Fi chip supplier. This record does not support intervention.

The only thing that is evident is that Panasonic wants to force a sovereign entity to sue an entity that UNMRI does not want to sue and could not sue even if it wanted to do so because PAS does not commit any infringing act in the United States of which UNMRI is aware. Sovereign immunity means the right of a State to decide when, by whom, and where it is to be sued or sue on its behalf. *See, e.g., Federal Maritime Comm'n v. South Carolina State Ports Auth.*, 535 U.S. 743, 754 (2002); *Bd. of Regents of the Univ. of Texas Sys. v. Bos. Sci. Corp.*, 936 F.3d 1365, 1374

(Fed. Cir. 2019) ("[A] State's dignitary interest in not litigating under conditions to which it did not agree" as important aspects of state sovereignty."). UNMRI does not consent to being forced to sue an entity it has no independent legal right or ability to sue.

### B.  Intervention is unwarranted under Rule 24(b).

Because there is no common question of law or fact, UNMRI respectfully requests that the Court exercise its discretion and deny intervention under Rule 24(b). *U.S. Ethernet Innovations, LLC*, 2010 WL 11488729, at *2 ("Allowing permissive intervention under Rule 24(b) is wholly discretionary *even where there is a common question of law or fact*.") (emphasis added).

Joinder is liberally allowed in cases where joinder avoids multiple lawsuits because the parties seeking joinder have real, immediate, and resolvable legal interests.[5] That is not the case here. As detailed in UNMRI's Opposition (Dkt. 35), PAS cannot sue UNMRI because UNMRI has sovereign immunity. *See Regents of University of New Mexico v. Knight*, 321 F.3d 1111 (Fed. Cir. 2003); *STC.UNM v. Quest Diagnostics Inc.*, CIV 17-1123 MV/KBM, 2019 WL 1091390, at *1 (D.N.M. Mar. 8, 2019). UNMRI also cannot sue Panasonic because Panasonic does not infringe the patent-in-suit by importing, selling, offering to sell, using, or making anything in the United States. 35 U.S.C. § 271. Thus, Panasonic and UNMRI do not have a justiciable dispute between them, and by extension there can be no "claim or defense [between PAS and UNMRI] that shares with the main action a common question of law or fact." FED. R. CIV. 24(b)(1).

### II.  CONCLUSION

For the foregoing reasons, Panasonic's Motion to Intervene should be denied.

---

[5] In *Uniloc*, in addition to the Verizon action, the plaintiff had "brought a similar lawsuit against AT&T, alleging that Ericsson's base stations infringe the same patent." *Uniloc*, 2019 WL 1773118, at *3. "[T]o reduce the likelihood of inconsistent judgments against its products," Ericsson "sought intervention in both cases." *Id*. Here, no such risk exists because UNMRI cannot assert the patent-in-suit against Panasonic.

DATED: January 16, 2024

Respectfully submitted,

By: /s/ *Michael W. Shore*

| | |
|---|---|
| Michael W. Shore (Texas 18294915) | Charles L. Ainsworth (Texas 00783521) |
| Chijioke E. Offor (Texas 24065840) | Robert Christopher Bunt (Texas 00787165) |
| THE SHORE FIRM LLP | PARKER, BUNT & AINSWORTH, P.C. |
| 901 Main Street, Suite 3300 | 100 East Ferguson, Suite 418 |
| Dallas, Texas 75202 | Tyler, Texas 75702 |
| Tel: (214) 593-9110 | Tel: (903) 531-3535 |
| Fax: (214) 593-9111 | charley@pbatyler.com |
| mshore@shorefirm.com | rcbunt@pbatyler.com |
| coffor@shorefirm.com | |
| | |
| *Counsel for Plaintiff* | *Counsel for Plaintiff* |
| *UNM Rainforest Innovations* | *UNM Rainforest Innovations* |

## CERTIFICATE OF SERVICE

The undersigned certifies that all counsel of record who are deemed to have consented to electronic service are being served with a copy of this document via the Court's CM/ECF system on January 16, 2024.

/s/ *Michael W. Shore*
Michael W. Shore